UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JACQUELINE K. LONGWILL,<br><br>                              Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br><br>                             Defendant. | Case No. 3:23-cv-00160-CLB<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>[ECF No. 13] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Jacqueline K. Longwill's ("Longwill") application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently pending before the Court is Longwill's motion for reversal and remand. (ECF No. 13.) The Commissioner filed a response, (ECF No. 15), and Longwill replied. (ECF No. 16.) Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 10), the Court concludes that there is new evidence which is material and for which there is good cause it was not included in the record previously. Therefore, the Court grants Longwill's motion for remand, (ECF No. 13), for consideration of new evidence.

I.      **STANDARDS OF REVIEW**

      A.      **Judicial Standard of Review**

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not

speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.     Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.  CASE BACKGROUND

### A.  Procedural History

Longwill applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on March 30, 2020, with an alleged disability onset date of November 23, 2017. (AR 23.) Longwill's application was denied initially on December 17, 2020, and upon reconsideration on January 21, 2022. (AR 165-168.) Longwill subsequently requested an administrative hearing and on October 20, 2022, Longwill and her attorney appeared at a telephonic hearing before an ALJ. (AR 99-131.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on October 21, 2020, finding that Longwill was not disabled because she could perform other work that exists in

significant numbers in the national economy. (AR 21-42.) Longwill appealed, and the Appeals Council denied review. (AR 1-7.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Longwill filed a complaint for judicial review on April 14, 2023. (*See* ECF No. 1.)

### B.     ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 21-42.) Ultimately, the ALJ disagreed that Longwill has been disabled from November 23, 2017, the alleged onset date, through the date of his decision. (AR 41.) The ALJ held that, based on Longwill's RFC, age, education, and work experience, Longwill could perform other work that exists in significant numbers in the national economy. (AR 40-41.)

In making this determination, the ALJ started at step one. Here, the ALJ found Longwill had not engaged in substantial gainful activity since the alleged onset date of November 23, 2017. (AR 26.) At step two, the ALJ found Longwill had the following severe impairments: cervical degenerative disc disease with muscle spasms, left carpal tunnel syndrome, schizophrenia and personality disorder, post-traumatic stress disorder, panic disorder, and major depressive disorder. (AR 27.) At step three, the ALJ found Longwill did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (AR 27-30.)

Next, the ALJ determined Longwill has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:

> she can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and/or walk with normal breaks for a total of 6 hours in an 8 hour workday, can sit with normal breaks for a total of 6 hours in an 8 hour workday. She could frequently handle, finger, feel, and reach bilaterally. She would be limited to jobs that do not require the use of ropes, ladder or scaffolds. She could occasionally climb ramps and stairs. She could occasionally balance, crouch, stoop, kneel, crawl, and bend. The individual would be limited to jobs that do not require exposure to dangerous

> machinery or moving machine parts as well as unprotected heights. She could frequently rotate, flex, and extend her neck. She is limited to and capable of work in goal oriented jobs with simple routine and repetitive instructions not done at an assembly line or at a production quota pace, a job in which the individual is limited to occasional decision making, occasional changes of workplace setting and occasional changes to workplace routine, and a job in which she has only occasional contacts with supervisors, co-workers, and customers.

(AR 30.)

The ALJ found Longwill's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Longwill's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 31-32.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Longwill's credibility. (AR 31-40.) The ALJ then determined that Longwill is not capable of performing past relevant work, as a data entry clerk, furniture assembler, or furniture salesperson, as actually or generally performed. (AR 24-25.)

Relying on the testimony of the VE, the ALJ determined that Longwill's age, education, work experience, and RFC would allow her to perform other occupations existing in significant numbers in the national economy, such as: maker, cleaner or housekeeper, and routing clerk. (AR 40-41.) Accordingly, the ALJ held that Longwill had not been under a disability since the alleged onset date of November 23, 2017, through the date of the decision, and denied Longwill's claim. (AR 41.)

### III. ISSUE

Longwill seeks judicial review of the Commissioner's final decision denying DIB and SSI under Titles II and XVI of the Social Security Act. (ECF No. 13.) Longwill raises two issues for this Court's review:

(1) Whether the ALJ failed to articulate clear and convincing reasons for rejecting Longwill's testimony regarding her cervical spine impairment; and

(2) whether new and material evidence warrants remand. (*Id.* at 6-13.)

## IV. DISCUSSION

### A. The ALJ articulated clear and convincing reasons for rejecting Longwill's subjective testimony.

First, Longwill argues the ALJ failed to articulate clear and convincing reasons for rejecting her testimony regarding her cervical spine impairment.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, inter alia, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the

nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

An ALJ may discredit a claimant's testimony when he reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Molina*, 674 F.3d at 1112-13; 20 C.F.R. § 404.1529(c)(3)(i). Further, the inconsistency between a claimant's alleged symptoms and his daily activities is sufficient to support a finding that a plaintiff was not entirely credible. *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether claimant engaged in daily activities inconsistent with alleged symptoms"). Specifically, daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989). Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

A review of the record shows the ALJ provided specific, clear, and convincing reasons for rejecting Longwill's testimony regarding her cervical spine impairment. The ALJ found that "[t]he medical evidence of record is inconsistent with and does not support the claimant's allegations of disabling physical functional limitations due to cervical degenerative disc disease with muscle spasms and left carpal tunnel syndrome." (AR 32.) Specifically, the ALJ found that:

> [T]he claimant's allegations are not consistent with the objective record. For example, the claimant reported no trouble with her gait, which is consistent with normal gait throughout the adjudicatory period (Ex. B7F/2, B2F/13, B3F/19, B4F/6, B7F/6, B8F/7, B9F/4, B15F/4). She was able to stand on a single leg (Ex. B9F/4). The record indicates that the claimant maintained generally normal strength, rated 4 out of 5 and 5 out of 5, throughout the

9

> adjudicatory period (Ex. B2F/10-14, B3F/16-20, B4F/3, 6, B7F/6, B8F/7, B9F/5). Straight leg raise testing was negative (Ex. B9F/8). The claimant also stated that she is able to drive a car, which generally requires the ability to stoop and bend to enter a vehicle, to push and pull with one's upper extremities to open or close a car door, to reach for and grasp a steering wheel, and to operate dashboard controls, to use one's lower extremities to operate foot controls, the ability to reach to use a seatbelt, and the ability to turn one's head and neck to perform lane changes (Ex. B6F/2). The claimant was able to handle mental demands of living independently and associated activities of daily living including performing household chores including sweeping, doing laundry, shopping, as well as the demands of caring for a pet (Ex. 8E, B6F/5).

(AR 32.) The ALJ concluded that "[s]uch evidence suggests that the claimant is not limited to the extent alleged by cervical degenerative disc disease with muscle spasms." (AR 32.)

Here, the Court finds that the ALJ did provide clear and convincing reasons for discounting Longwill's testimony by discussing how Longwill's daily activities were inconsistent with the allegations of disability. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible). Therefore, reversal or remand of the ALJ's decision is improper on this basis.

**B.     New Evidence**

The Court now considers whether remand is appropriate based upon new evidence identified by Longwill. Although a district court may remand a case to the Commissioner for consideration of new evidence, it may do so only when the new evidence is material. *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990); *see also* 42 U.S.C. § 405(g). "New evidence is material when it bear[s] directly and substantially on the matter in dispute, and if there is a reasonabl[e] possibility that the new evidence would have changed the outcome of the … determination." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010) (internal quotation marks and citations omitted); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (Evidence is material "only where there is a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination had it been before him." (quotation marks and

citation omitted)); see also 42 U.S.C. § 405(g).

"The Act states that a reviewing court presented with new evidence may remand to the agency for consideration of that evidence, but only upon a showing of 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Shaibi*, 883 F.3d at 1109 (amended Feb. 28, 2018) (quoting 42 U.S.C. § 405(g)); *see also Van v. Barnhart*, 483 F.3d 600, 605 & n.4 (9th Cir. 2007); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (For a district court to order a remand, the plaintiff must also show "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." (quoting 42 U.S.C. § 405(g))).

The new evidence provided by Longwill consists of medical records from multiple visits with Dr. Olson, an orthopedic surgeon and "Fellowship Trained Spine Surgeon." (ECF No. 13-1.) The first visit occurred on March 15, 2023, and was a follow-up appointment for a cervical MRI. (*Id.* at 1.) Dr. Olson writes that "[Longwill] does have multilevel degenerative changes" and that Longwill preferred to pursue conservative treatment before discussing surgical intervention. (*Id.*) At the direction of Dr. Olson, Longwill had a cervical epidural injection and attended physical therapy. (*Id.*) On May 16, 2023, Longwill visited Dr. Olson again to discuss the results of the injection, which did very little to improve Longwill's pain and caused her to suffer severe migraines. (*Id.* at 3.) The injection made the pain worse to the point she "lost consciousness" in physical therapy. (*Id.*) Dr. Olson explains that "her physical exam show[ed] signs of significant neurological compromise, her MRI findings and failure of conservative treatment" they planned to proceed with spinal surgery, although Longwill would need clearance from her primary care provider. (*Id.*) The final visit report, on June 28, 2023, shows that Dr. Olson discussed specific details of the surgery, including associated risks and post-surgery activity levels with Longwill. (*Id.* at 5.) The surgery was not scheduled because Longwill still needed approval from her primary care provider. (*Id.*) Dr. Olson also noted he gave Longwill a small amount of tramadol due to the severity of her pain levels during the visit. (*Id.*)

The Commissioner argues that remand is not proper because the evidence does

not create a possibility of changing the ALJ's decision as Longwill testified about needing surgery during the hearing. (AR 108.) Longwill testified that "neck fusion surgery was suggested because of the three vertebrae that need to be replaced. But like I said before, I've heard nothing but horrible things about that, making it worse. So, I have no desire to do that at the moment." (AR 108.)  Iin response to the ALJ's question about whether she has been doing physical therapy, Longwill responds "[t]hat won't help because I need surgery. It's a surgical issue." (AR 108.) However, the ALJ does not reference the need for neck fusion surgery or Longwill's reluctance to receive spinal in his decision. (*See* AR 21-42.) As the Court is "constrained to review the reasons the ALJ asserts," the Court cannot say whether the ALJ considered Longwill's testimony about needing spinal surgery in making his determination. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citations omitted). Therefore, the Court finds it is a "reasonabl[e] possibility that the new evidence would have changed the outcome of the … determination" because the recommendation of spinal surgery from an orthopedic surgeon specializing in spine surgeries is a significant piece of evidence. *Luna*, 623 F.3d at 1034 (internal quotation marks and citations omitted).

Longwill argues there is good cause for failing to provide this evidence at the time of the ALJ's decision because it did not exist at the time and the appointments all occurred after the hearing. (ECF No. 13 at 13.) Although Longwill does not explain why these appointments could not have been scheduled prior to the hearing, the Commissioner does not dispute that there is good cause for failure to provide the documents previously. (*See* ECF No. 15.) Therefore, the Court finds the good cause requirement is met.

As the Court finds that the new evidence is material and the good cause requirement is met, the Court remands this issue to the agency for consideration of the medical evidence provided by Longwill in her motion for remand, (ECF No. 13-1).

**V.      CONCLUSION**

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's

decision was supported by substantial evidence and is free of legal error. However, the Court finds it proper to remand the case to the Commissioner for consideration of new evidence provided by Longwill.

Accordingly, **IT IS THEREFORE ORDERED** that Longwill's motion to remand (ECF No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Social Security Administration for further proceedings to consider new evidence.

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**:  October 10, 2023.

_____
**UNITED STATES MAGISTRATE JUDGE**